# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| MARIA WOLF, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CAPITAL MANAGEMENT SERVICES, LP, <br><br> Defendant. | Case No.: 19-cv-558 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Maria Wolf is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt arose from a consumer transaction that included agreements to defer payment.

6. Defendant Capital Management Services, LP, ("CMS") is a debt collection agency with its principal offices located at 698 ½ South Ogden Street, Buffalo, New York.

7. CMS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. CMS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. CMS is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

**FACTS**

10. On or about March 28, 2018, Department Stores National Bank ("DSNB") mailed Plaintiff an account statement associated with her "Macy's" store-branded credit card. A copy of this account statement is attached to this Complaint as Exhibit A.

11. Upon information and belief, the alleged debt referenced in Exhibit A was incurred for personal, household, and family purposes, including the purchase of goods at Macy's stores.

12. Exhibit A contains the following:

| Summary of Account Activity | |
|---|---|
| Previous Balance | $3,230.33 |
| Payments | -$0.00 |
| Other Credits | -$0.00 |
| Purchases/Other Debits | +$0.00 |
| Fees Charged | +$38.00 |
| Interest Charged | +$46.12 |
| ⊖ New Balance | $3,314.45 |
| Past Due Amount | $328.15 |

| | |
|---|---|
| Credit Limit | $0.00 |
| Available Credit | $0.00 |
| Amount Over Credit Limit | $114.45 |
| Statement Closing Date | 03/28/2018 |
| Next Statement Closing Date | 04/27/2018 |
| Days in Billing Cycle | 31 |

| Payment Information | |
|---|---|
| New Balance | $3,314.45 |
| Minimum Payment Due | $560.75 |
| Payment Due Date | April 24, 2018 |

**Late Payment Warning:** If we do not receive your minimum payment by the date listed above, you may have to pay a late fee up to $38.

**Minimum Payment Warning:** If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 17 years | $10,765 |
| $152 | 3 years | $5,460 (Savings=$5,305) |

If you would like information about credit counseling services, call 1-877-337-8188.

13. The payment remittance slip in Exhibit A also contains the following:

| Payment Due Date | April 24, 2018 |
|---|---|
| New Balance | $3,314.45 |
| Minimum Payment Due | $560.75 |

14. Exhibit A states that, as of March 28, 2018, Plaintiff's account had a "New Balance" of $3,314.45, with a "Past Due Amount" of $328.15, an "Amount Over Credit Limit" of $114.45, a "Minimum Payment Due" of $560.75," and a "Payment Due Date" of April 24, 2018.

15. On or about April 19, 2018, CMS mailed Plaintiff a debt collection letter regarding the same alleged debt owed to DSNB. A copy of this letter is attached to this Complaint as Exhibit B.

16. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

17. Upon information and belief, Exhibit B is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

18. Upon information and belief, Exhibit B was the first letter Defendantsent to Plaintiff regarding this alleged debt.

19. Exhibit B contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail alleged debtors along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different than the current creditor.

20. The header in Exhibit B also contains the following:

```
Original Creditor: (DSNB) DEPARTMENT STORES NATIONAL
BANK
Current Creditor: (DSNB) DEPARTMENT STORES NATIONAL
BANK
Description: MACY'S
Account #: XXXXXXXXXX1687
AMOUNT ENCLOSED: _____
New Balance: $3314.45
Minimum Payment Due: $446.30
```

21. The body in Exhibit B also states: "As of the date of this letter, the minimum payment due is $446.30."

22. Exhibit B is false, deceptive, misleading, and confusing to the unsophisticated consumer.

23. The information CMS provided in Exhibit B contradicts and conflicts with the information that the creditor, DSNB, provided in Exhibit A.

24. Exhibit B states that the "Minimum Payment" is $446.30, whereas Exhibit A states that the "Minimum Payment Due" is $560.75 at the same time.

25. Plaintiff did not make a payment between the time Exhibit A was mailed and the time Exhibit B was mailed; the "New Balance" stated in Exhibit B is equal to the "New Balance" stated in Exhibit A.

26. Plaintiff's account would have remained in default even if she tendered the "minimum payment due" stated in Exhibit B.

27. While it is not unusual for banks to hire a debt collector to collect only the "past due" amount, i.e. missed payments and fees, of a credit card balance rather than the whole balance, *see, e.g., Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 840 (7th Cir. 2007) (holding that "only the past due amount, the amount owed [to the debt collector], can be the

4

'amount of the debt' under § 809(a)(1)."), the "Minimum Payment" stated in Exhibit B also does not correspond with the "Past Due Amount" stated in Exhibit A.

28. A debt collector materially misleads debtors when it represents that it is collecting a "minimum payment," if the amount stated in the letter is, in fact, a past due amount that is less than the minimum payment due on the date the debt collection letter is mailed. *E.g., Magee v. AllianceOne, Ltd.*, 487 F. Supp. 2d 1024, 1029 (S.D. Ind. Mar. 27, 2007) ("Magee had no way of knowing that when AllianceOne said 'minimum amount due' in the Letter it actually meant 'past due amount.'").

29. Upon information and belief, when CMS calculated the "Minimum Payment Due" in preparing Exhibit B, CMS's algorithm did not include the "Amount Over Credit Limit." The "Minimum Payment" stated in Exhibit B is $446.30, which is equal to the difference between the "Minimum payment Due" and "Amount Over Credit Limit" stated in Exhibit A.

30. Upon information and belief, the "Amount Over Credit Limit" is part of the Minimum Payment. *See, e.g.,* https://files.consumerfinance.gov/a/assets/credit-card-agreements/pdf/Department_Stores_National_Bank/Macy_s_American_Express_Credit_Card_Disclosures_and_Agreement.pdf ("We calculate the Minimum Payment Due as follows. We begin with any past due amount. We add any amount in excess of your credit limit.").

31. Plaintiff was confused and misled by Exhibit B.

32. The unsophisticated consumer would be confused and misled by Exhibit B.

### *The FDCPA*

33. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to

5

protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lanev. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive*

6

*Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)).

34. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses"). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

35. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

36. 15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

37. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

38. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

7

39. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, chare, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

40. 15 U.S.C. § 1692g states:

a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

41. The amount of the debt due on the date the letter is mailed must be accurately and clearly stated, and the failure to clearly and accurately state the amount due as of the date of the letter is a per se violation of the FDCPA. *See, Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000).

### *The WCA*

42. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

43. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state."*Kett*v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

44. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

45. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

46. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

47. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

48. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

49. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

9

50. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

51. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

52. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

53. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

54. The failure to state the correct amount of debt and effectively convey a customer's validation rights can reasonably be expected to harass the customer. *See* Wis. Admin. Code DFI-Bkg § 74.16(9) ("Oppressive and deceptive practices prohibited.") (prohibiting licensed Collection Agencies from engaging in conduct that "can reasonably be expected to threaten or harass the customer, including conduct which violates the Federal Fair Debt Collection Practices Act"); *see also Flood v. Mercantile Adjustment Bureau, LLC*, 176 P.3d 769, 776 (Colo. Jan. 22, 2008) (communicating that a consumer's rights would be preserved through oral communication effectively misleads the consumer into delaying the transmission of the consumer's written request for the verifying documentation, thereby causing the loss of valuable consumer rights violated state statute forbidding harassing, abusive, misleading, and unfair debt collection practices).

## COUNT I – FDCPA

55. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

10

56. Defendant misrepresented the amount of the debt. *Compare* Exhibit A *with,* Exhibit B.

57. Exhibit A states that the "Minimum Payment Due" for Plaintiff's account is $560.75, and that the "Payment Due Date" was April 24, 2018.

58. Exhibit B, mailed on April 19, 2018, during the billing cycle stated in Exhibit A, states that the "Minimum Payment" was $446.30.

59. The unsophisticated consumer would be misled to believe that her account had a "Minimum Payment" of $446.30 as of the date of Exhibit B. In fact, as of the date of Exhibit B, a payment of $446.30 would not have returned Plaintiff's account to a current status, nor would it have allowed her to avoid the account charging off.

60. At a minimum, the consumer would be confused as to whether payment of $446.30 or $560.75 would bring her account current. *See Magee v. AllianceOne, Ltd.*, 487 F. Supp. 2d 1024, 1029 n.3 (S.D. Ind. Mar. 27, 2007) ("Magee had no way of knowing that when AllianceOne said 'minimum amount due' in the Letter it actually meant 'past due amount.'").

61. Defendant violated 15 U.S.C. § 1692e, 1692e(2)(A), 1692e(10), 1692f, 1692f(1), and 1692g(a)(1).

## **COUNT II – WCA**

62. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

63. Defendant misrepresented the amount of the debt.

64. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

11

## CLASS ALLEGATIONS

65. Plaintiff brings this action on behalf of a Class consisting of (a) all natural persons in the State of Wisconsin, (b) who were sent an initial collection letter in the form represented by Exhibit B to the complaint in this action, (c) seeking to collect a credit card account debt owed to DSNB, (d) where the account referenced by the letter in the from of Exhibit B had an "Amount Over Credit Limit" greater than zero, (e) and the "Amount Over Credit Limit" was not included in the "Minimum Payment Due" stated in the letter in the form of Exhibit B, (f) the debt was incurred for personal, family or household purposes, (g) and the letter in the form of Exhibit B was mailed between April 17, 2018 and April 17, 2019, inclusive, (h) and was not returned by the postal service.

66. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

67. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant violated the FDCPA and the WCA.

68. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

69. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

70. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

71. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit;

(d) injunctive relief; and

(e) such other or further relief as the Court deems proper.

Dated: April 17, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com

13